IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JARRON PRICE,                        )
No. M16872,                          )
                                     )
        Plaintiff,                   )
                                     )    Case No. 17−cv–00052−MJR
vs.                                  )
                                     )
MICHAEL SANDERS,                     )
VENTURES JACKSON,                    )
JASON GARNETT, and                   )
KENNETH FINNEY,                      )
                                     )
        Defendants.                  )

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Jarron Price, currently an inmate in Hill Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff's claims pertain to his former incarceration at Big Muddy River Correctional Center ("Big Muddy") and a false disciplinary report allegedly filed against the Plaintiff as an act of retaliation. In connection with his claims, Plaintiff seeks damages from Michael Sanders (adjustment committee chairperson), Ventures Jackson (lieutenant), Jason Garnett (Big Muddy warden), and Kenneth Finney (correctional officer). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### **The Complaint**

On June 10, 2015, Plaintiff was confined to isolation and under suicide watch. (Doc. 10, p. 4). Plaintiff directed a question to Finney, a corrections officer, and Finney responded with racially charged remarks. *Id.* Specifically, Finney stated "you niggers disgust me, always claiming to want to kill yourself but when it's time to die you beg for forgiveness. Just die already and do yourself a favor." *Id.* Plaintiff immediately told Finney that he intended to file a grievance regarding Finney's comments. *Id.* Finney threatened Plaintiff, stating he would show Plaintiff how to play "the paper game" if Plaintiff filed a grievance. (Doc. 10, pp. 4-5). The following day, Finney filed a disciplinary report claiming Plaintiff threatened to sexually assault another inmate (inmate Jones M-48532). (Doc. 10, p. 5; Doc. 10-1, p. 1). Plaintiff alleges the charges were false and that Finney was retaliating against Plaintiff for threatening to file a grievance. (Doc. 10, p. 5).

On June 19, 2015, Plaintiff was called to a disciplinary hearing regarding Finney's disciplinary report. *Id.* Sanders, the adjustment committee chairperson, and Jackson, a lieutenant, conducted the hearing. *Id.* Plaintiff pleaded not guilty. *Id.* Sanders and Jackson entered a finding of guilty and, in entering the finding of guilty, told Plaintiff they "protect their own." *Id.* Plaintiff was disciplined with segregation (3 months), demotion to c-grade (3 months), commissary restriction (3 months), gym/yard restriction (3 months), day room restriction (3 months), and transfer to a "higher level" prison. *Id.* When Plaintiff received a summary report, he realized Sanders and Jackson signed the report prior to the hearing – on June 18, 2015. *Id.*

Plaintiff filed a grievance. *Id.* It appears that the grievance complained about the signature date on Plaintiff's summary report. ((Doc. 10-1, p. 3) ("Offender Price grieves the date of the Adjustment Committee hearing was June 19th and the Adjustment Committee chairman signed the hearing summary on June 18th.")). The grievance was initially denied and Plaintiff appealed. (Doc. 10, p. 5; Doc. 10-1, p. 3). After 6 months, the Administrative Review Board issued a decision in favor of Plaintiff and expunged the disciplinary action. (Doc. 10-1, p. 3). *Id.* Plaintiff has attached a copy of the Administrative Review Board's letter, which provides, in relevant part, as follows:

> This office has reviewed the disciplinary report, 201500996, written by K. Finney, citing you for the offenses of 206 – Intimidation or Threats. A review of the Adjustment Committee summary indicates you were found guilty of 206. Recommended discipline was: 3 months C-grade, 3 months Segregation, 3 months Day Room Restriction, 3 months Commissary Restriction, Transfer, 3 months gym/yard restriction. The Chief Administrative Officer concurred with the recommendation on June 20, 2015.
>
> Based on a total review of all available information and a compliance check of the procedural due process safeguards outlined in DR504, this office recommends the disciplinary report be expunged due to non-compliance with DR504.80. The original hearing was not continued due to the facility being on lockdown. In

addition, the second summary included additional discipline not indicated in the first served summary. The Big Muddy Rive Adjustment Committee is to expunge the disciplinary report (201500996).

(Doc. 10-1, p. 3).

While Plaintiff was in segregation, because of the gym/yard restriction, he was subjected to a complete bar on all exercise outside of his cell. *Id.* Therefore, considering the other disciplinary restrictions imposed on Plaintiff, it appears he was restricted to his cell for 24 hours a day for 90 days. Plaintiff does not specify whether he was able to exercise within his cell or otherwise describe the conditions of his confinement while in segregation.

Plaintiff contends that, prior to being subjected to disciplinary segregation, Plaintiff was labeled "Seriously Mentally Ill" or "SMI." (Doc. 10, p. 5). Plaintiff alleges Defendants failed to consider his status as an SMI inmate prior to imposing disciplinary action. *Id.* Plaintiff further contends that he attempted suicide and self-harm while in segregation. (Doc. 10, p. 6).

With respect to Garnett, Plaintiff merely alleges he "denied my claim." (Doc. 10, p. 5).

## **Discussion**

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

> **Count 1-** Fourteenth Amendment claim for deprivation of a liberty interest without due process against Finney for writing a false disciplinary report.
>
> **Count 2-** Fourteenth Amendment claim for deprivation of a liberty interest without due process against Sanders and Jackson for finding Plaintiff guilty of the false charge.

4

>    **Count 3-** Eighth Amendment claim for cruel and unusual punishment against Finney for verbally harassing Plaintiff while he was on suicide watch.
>
>    **Count 4-** Eighth Amendment claim for cruel and unusual punishment against Sanders and Jackson for imposing 90 days disciplinary segregation on Plaintiff in conjunction with a 90 day restriction on outside exercise in relation to a false disciplinary ticket.
>
>    **Count 5-** First Amendment Retaliation Claim against Finney for filing a false disciplinary report after Plaintiff threatened to file a grievance.
>
>    **Count 6-** Constitutional claim against Garnett for denying Plaintiff's claim.

**Counts 1 and 2 – Procedural Due Process**

*Preliminary Matter – Expungement of Disciplinary Action*

In the instant case, the subject disciplinary action was expunged by the Administrative Review Board. The Seventh Circuit has held that there is "no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995). This is because "[t]he administrative appeal process is part of the due process afforded prisoners." *Id.* However, in dicta, the Seventh Circuit indicated that this rule is only applicable when the administrative appeal corrects the "procedural error *before* the punishment has begun." *Id.* at n. 4 (7th Cir.1994) (citing *Walker v. Bates*, 23 F.3d 652, 657-59 (2d Cir. 1994), cert. denied, 515 U.S. 1157, 115 S.Ct. 2608, 132 L.Ed.2d 852 (1995) (emphasis added)). The Seventh Circuit went on to discuss the reasoning in *Walker*:

> The court in *Walker* concluded that if the prisoner has begun his punishment before the defect is cured on appeal, the prison board is answerable in damages absent a successful qualified immunity defense. Once the cause of action accrues, nothing the state subsequently does can cut off the Section 1983 action. The court emphasized that prisoner Walker would not have been placed in segregation but for the invalid decision. The driving force behind this conclusion, however, was the deprivation of a liberty interest for which compensation must be made.

5

*Id.* (internal citations omitted). Ultimately, the Seventh Circuit concluded that the rule announced in *Walker* did not apply because, unlike Walker, Morissette did not sustain an "undeserved deprivation." *Id.*

The deprivation at issue in the instant case is similar to the deprivation at issue in *Walker*. Although dicta, the Seventh Circuit's discussion of *Walker* suggests that the Appellate Court might apply the same reasoning to the instant case. Accordingly, the Court will not, at this early stage in the litigation, dismiss Plaintiff's due process claims on the ground that the subject disciplinary action was subsequently expunged during the administrative review process.

*Analysis*

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Therefore, evaluation of Plaintiff's due process claims involves a two-part inquiry. First, the Court considers whether a constitutionally protected interest was at stake. If it was, the Court must examine whether the disciplinary proceeding was conducted in accordance with procedural due process requirements.

As to the first inquiry, the Court focuses on Plaintiff's placement in disciplinary segregation.[1] The Seventh Circuit has held that "due process claims based on 'relatively short' terms of segregation implicate no protected liberty interest, while longer terms may implicate a liberty interest depending on the conditions of confinement. *Younger v. Hulick*, 482 F. App'x. 157, 159 (7th Cir. 2012) (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697–98 (7th Cir.

---

[1] Punishments such as demotion in grade, commissary restriction, or transfer to another facility do not amount to a constitutional deprivation. *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (prisoners do not have a protectable liberty interest in demotion to C-grade and loss of commissary privileges); *Id*. at 760 (prisoner has no liberty interest in remaining in general population or avoiding transfer to another prison).

6

2009).  In the instant case, Plaintiff spent 90 days in disciplinary segregation.  This period of time is just long enough to trigger an inquiry into the conditions of Plaintiff's confinement.  *See Younger*, 482 F. App'x. at 159 ("At 90 days, Plaintiff's segregation falls just beyond those terms that we have held do not require inquiry into conditions.").

With regard to the conditions of Plaintiff's confinement,[2] the Court notes the subject disciplinary action included a gym/yard restriction and a day room restriction.  (Doc. 10, p. 5; Doc. 10-1, p. 3).  As the Court understands Plaintiff's allegations, because of these restrictions, Plaintiff was completely deprived of all opportunity for out-of-cell[3] exercise and recreation; that is, Plaintiff remained in his cell 24 hours a day for 90 days.

The Seventh Circuit has recognized that a lack of exercise can, under certain circumstances, amount to a constitutional violation.  *See Delaney v. DeTella*, 256 F.3d 679, 683–84 (7th Cir.2001) (collecting cases).  Here, the length of the deprivation at issue (90 days) in conjunction with a complete denial of all opportunity for out-of-cell exercise and activities (as opposed to a mere reduction in out-of-cell exercise) place Plaintiff's time in segregation on the cusp of implicating a protected liberty interest.  *See Lekas v. Briley,* 405 F.3d 602, 610-11 (7th Cir. 2005) (90 days in segregation – 56 of which were disciplinary – combined with a "drastic reduction" in yard/gym privileges did not amount to a constitutional deprivation); *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) (70 days of 24 hour a day segregation, including a complete denial of out-of-cell activities and exercise was permissible); *Jamison–Bey v. Thieret*, 867 F.2d 1046, 1048 (1989) (reversing summary judgment for prison officials where segregated

---

[2] In assessing whether Plaintiff's disciplinary segregation amounts to a constitutional deprivation, the Court must determine if the segregation conditions amounted to an "atypical and significant hardship ... in relation to the ordinary course of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Here, the "key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

[3] The First Amended Complaint does not indicate whether Plaintiff's cell was large enough for indoor exercise.

7

prisoner denied exercise for 101 days). *See also Delaney,* 256 F.3d at 685 (acknowledging that there is a "strong likelihood of psychological injury when segregated prisoners are denied all access to exercise for more than 90 days.").

The Court further notes that, in the instant case, Plaintiff (1) had been labeled SMI, (2) was suicidal prior to placement in segregation, and (3) attempted self-harm and suicide while in segregation. Considering these facts in conjunction with the length of Plaintiff's segregation and the restrictions on out of cell exercise and activities, the Court cannot conclude, at this stage in the litigation, that the subject disciplinary action did *not* involve a protected liberty interest. Accordingly, dismissal under § 1915A, on this ground, is inappropriate.

This brings the Court to the second inquiry: Whether the disciplinary proceeding was conducted in accordance with procedural due process requirements. Procedural due process in the prison context requires compliance with the protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Specifically, an inmate is entitled to (1) advanced written notice of the charge against him; (2) the right to appear before an impartial hearing panel; (3) the right to call witnesses and present documentary evidence if prison safety allows; and (4) a written statement of the reasons for the discipline imposed. *Wolff*, 418 U.S. at 563-69. In addition, the disciplinary decision must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Here, Plaintiff's claim involves allegedly false disciplinary charges. Generally, the filing of false disciplinary charges by a correctional officer does not state a procedural due process claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the due process protections described above. *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984). However, in the instant case, Plaintiff alleges he was *not*

afforded procedural due process. Specifically, Plaintiff claims (1) he was found guilty the day before he actually appeared for the hearing and (2) the hearing officers found him guilty because they "protect their own." These allegations raise questions as to the hearing officers' impartiality and the evidentiary basis for the guilty finding. Accordingly, Plaintiff has stated a viable claim for violation of his procedural due process rights. *See Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (a plaintiff states a claim for violation of procedural due process rights when he alleges that defendants have filed and/or approved disciplinary tickets, reports, and other documents that contain false charges that are not supported by any evidence.).

For the reasons described herein, Counts 1 and 2 shall receive further review. The Court notes that a further developed record may show the punishment imposed on Plaintiff did not give rise to a protected liberty interest (in which case Plaintiff had no right to procedural due process). For example, discovery may reveal that Plaintiff had an opportunity for adequate exercise in his cell. *See Pearson*, 237 F.3d at 890 (Ripple, J. concurring) (in cell exercise may serve as an adequate alternative to out-of-cell exercise). The record needs development on the exact deprivations Plaintiff suffered in order to determine whether Plaintiff's constitutionally protected liberty interests were affected. Therefore, Count 1 shall proceed against Finney and Count 2 shall proceed against Sanders and Jackson.

**Count 3 – Cruel and Unusual Punishment (Finney)**

In *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000), the Seventh Circuit held that "*simple verbal harassment*", such as the use of racially derogatory language, does not, standing alone, constitute cruel and unusual punishment. *Id*. at 612 (emphasis added). *See also Dobbey v. Ill. Dep't of Corrections,* 574 F.3d 443, 446 (7th Cir. 2009) ("[H]arassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment."); *Patton v. Przbylski*,

822 F.2d 697, 700 (7th Cir. 1987) (although unprofessional and inexcusable, racially derogatory remarks did not support a constitutional claim).

The Seventh Circuit recently revisited *DeWalt's* holding in *Beal v. Foster*, 803 F.3d 356 (7th Cir. 2015). In *Beal*, the Appellate Court explained that "purely verbal" harassment can, under certain circumstances, amount to cruel and unusual punishment. *Id.* at 357-58. To illustrate this point, the Appellate Court discussed the following hypotheticals:

> Suppose a prisoner is having severe headaches and he complains about them to a prison doctor, who writes him a prescription for a powerful drug. A malicious guard learns of this and tells the prisoner the following lie: "the doctor didn't tell you, but he told me: you have incurable brain cancer and will be dead in three months. Now let me tell you what he told me are the symptoms you will be experiencing as your cancer worsens." Or the guard, again lying, tells another prisoner: "I am sorry to have to inform you that your wife and children have been killed in a car crash."

*Id.* at 357. The Seventh Circuit noted that, despite being "purely verbal," the harassment in both examples was "as cruel" as cases involving "physical brutalization." *Id.* Accordingly, the Court reasoned, drawing "a categorical distinction between verbal and physical harassment is arbitrary." In other words, both physical and psychological pain can constitute cruel punishment. *Id.* at 357-58. In reaching this decision, the Court clarified that "simple," as used to describe verbal harassment in *DeWalt*, was the wrong word:

> [I]t is unclear what "simple" is intended to connote. In our hypothetical examples, the verbal harassment is "simple" in the sense of being brief, lucid, and syntactically simple. But what is simple can also, as in our two examples, be devastating. In *DeWalt* the plaintiff had alleged that a prison officer had "made a series of sexually suggestive and racially derogatory comments to [the plaintiff] regarding certain female teachers at the prison schools." *Id.* at 610. This verbal harassment was directed, to a significant degree, at the female teachers rather than at DeWalt, and second-hand harassment may be too "simple" to state a claim of cruel and unusual punishment, whereas the lies in our two hypothetical cases were aimed directly and hurtfully at the prisoner. But "simple" is the wrong word; what is meant is "fleeting," too limited to have an impact.

10

*Beal,* 803 F.3d at 358.

In the instant case, Plaintiff alleges that while he was on suicide watch, Finney stated "you niggers disgust me, always claiming to want to kill yourself but when it's time to die you beg for forgiveness. Just die already and do yourself a favor." (Doc. 10, p. 4). This allegation involves more than a racial slur. If true, Finney actually encouraged a seriously mentally ill prisoner, who was on suicide watch, to commit suicide. Considering the authority discussed above, the Court cannot say, at the screening stage, that the subject harassment is clearly below the required threshold. The Court notes, however, that Plaintiff will have additional hurtles to clear. The *Beal* opinion indicates that purely verbal harassment only constitutes cruel and unusual punishment when the harassment threatens physical assault or causes severe psychological harm. *Beal*, 803 F.3d at 357-59. The Appellate Court also emphasized that most verbal harassment does not rise to the level of cruel and unusual punishment. *Id.* at 358.

Further development of the record is necessary to determine whether the subject harassment was severe enough to trigger constitutional scrutiny. Accordingly, Count 3 shall receive further review as to Finney.

**Count 4 – Cruel and Unusual Punishment (Jackson and Sanders)**

The Seventh Circuit held in *Pearson v. Ramos* that "a denial of yard privileges of no more than 90 days at a stretch is not cruel and unusual punishment." 237 F.3d 881, 884 (7th Cir. 2001). However, the Appellate Court "left open the possibility that a denial of *less* than 90 days could be actionable if the punishment was imposed for "some utterly trivial infraction" of the prison's rules because the Eighth Amendment requires consideration of the proportionality of the punishment relative to the crime. *Rasho v. Walker*, 393 F. App'x 401, 403 (7th Cir. 2010)

11

(quoting *Pearson*, 237 F.3d at 884) (emphasis in original). *See also Leslie v. Doyle,* 125 F.3d 1132, 1135 (7th Cir. 1997) (because the Eighth Amendment embodies a principle of proportionality, the imposition of a sufficiently serious punishment "for no offense at all" may state a claim because such a punishment is, "as a matter of mathematics, disproportionate.").

In the instant case, Plaintiff alleges the subject disciplinary action was imposed for no reason at all. Considering the authority discussed above, Plaintiff may have alleged an actionable objective harm. However, an objective harm, standing alone, is not enough to state a claim for cruel and unusual punishment; a prisoner must also allege facts that, if true, would satisfy the subjective component applicable to all Eighth Amendment claims. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *See also Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The subjective component of unconstitutional punishment focuses on the state of mind of the defendant. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994). In order to satisfy this second requirement, a plaintiff must show that a defendant was deliberately indifferent to a substantial risk of serious harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994). In other words, the prison official must have acted or failed to act despite the official's knowledge that his course of action (or inaction) could result in a violation of the prisoner's constitutional rights. *Farmer*, 511 U.S. at 842. "Deliberate indifference requires more than negligence, rather the defendant 'must meet essentially a criminal recklessness standard, that is, ignoring a known risk.' " *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (quoting *McGee v. Adams*, 721 F.3d 474, 480-81 (7th Cir. 2013)) (other internal quotation and citation omitted).

In the instant case, the minimal allegations as to Jackson and Sanders fall short of demonstrating that either Defendant acted with the requisite culpable state of mind. Accordingly, this claim shall be dismissed without prejudice.

### Count 5 - Retaliation

Plaintiff alleges Finney retaliated against him for *threatening* to file a grievance. The threat to file a grievance cannot be the basis for a retaliation claim; Plaintiff must actually have filed the grievance. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("But it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance.") (emphasis in original). Accordingly, Plaintiff's comments regarding his intent to file a grievance cannot be a basis for a retaliation claim and this claim shall be dismissed with prejudice.

### Count 6 – Unspecified Constitutional Claim as to Garnett

Plaintiff's final claim concerns Garnett, Big Muddy's Warden, who he claims violated his rights in an unspecified fashion by "denying [his] claim" and "approv[ing] of the summary." (Doc. 10, pp. 2, 5). Plaintiff may be attempting to assert a due process claim against Garnett for denying his grievance. However, the denial of a grievance, standing alone, does give rise to such a claim. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause"). Plaintiff may also be attempting to assert an Eighth Amendment claim in relation to Garnett denying Plaintiff's "claim." *See Vance v. Peters,* 97 F.3d 987, 993-94 (7th Cir. 1996) ("As we have noted earlier, a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to

investigate and, if necessary, to rectify the offending condition.") (citing *Antonelli*, 81 F.3d at 1428). The sole allegation directed at Garnett, however, is too vague to state such a claim.

Ultimately, the Court cannot discern what claim Plaintiff is attempting to assert as to Garnett. Accordingly, this claim shall be dismissed without prejudice. As this is the only claim directed at Garnett, he shall be dismissed from this action without prejudice.

## Pending Motions

Plaintiff's initial Motion for Leave to Proceed *In Forma Pauperis* ("IFP") has been granted. (Doc. 8). Accordingly, Plaintiff's second IFP Motion (Doc. 11) is **DENIED** as moot. Further, because Plaintiff has been granted IFP status, his motions for service of process at government expense (Doc. 4 and Doc. 11) are unnecessary and are **DENIED** as moot.

Plaintiff has also filed two Motions for Recruitment of Counsel (Doc. 3 and Doc. 12). The initial Motion for Recruitment of Counsel (Doc. 3) shall be **DENIED** as moot. The second Motion for Recruitment of Counsel (Doc. 12) shall be **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for a decision.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** and **COUNT 3** shall proceed against **FINNEY** in his individual capacity. **IT IS FURTHER ORDERED** that **COUNT 2** shall proceed against **JACKSON** and **SANDERS** in their individual capacities.

**IT IS FURTHER ORDERED** that **COUNT 4** is **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that **COUNT 5** is **DISMISSED** with prejudice on the ground that it is legally frivolous.

**IT IS FURTHER ORDERED** that **COUNT 6** is **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted. As this is the only claim directed against Garnett, Garnett shall be dismissed without prejudice. The Clerk is directed to **TERMINATE GARNETT** as a party in CM/ECF**.**

With respect to **COUNTS 1, 2** and **3,** the Clerk of the Court shall prepare for Defendants **FINNEY, SANDERS,** and **JACKSON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received

by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 12). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  June 5, 2017**

<u>s/ **MICHAEL J. REAGAN**</u>
**Chief Judge**
**United States District Court**
